IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

AT CHARLESTON

JEFFREY C. SKEENS, as Administrator
of the Estate of Grover Skeens,
CAROLYN D. DAVIS, as Administratrix
of the Estate of Charles T. Davis and
OWEN T. DAVIS, as Administrator
of the Estate of Cory Davis,

   Petitioners,

v.               Civil Action No. 5:12-6854
                 Judge: _____

ALPHA NATURAL RESOURCES, INC.,
ALPHA APPALACHIA HOLDINGS, INC.,
f/k/a MASSEY ENERGY COMPANY,

   Respondents.

**COMPLAINT TO ENFORCE CONTRACTUAL
NON-PROSECUTORIAL AGREEMENT AS IT RELATES TO PAYMENT OF
CRIMINAL RESTITUTION OR, IN THE ALTERNATIVE, TO ENFORCE
<u>PAYMENTS UNDER PRIOR SETTLEMENT AGREEMENTS</u>**

The Petitioners, Jeffrey C. Skeens, as Administrator of the Estate of Grover Skeens, Carolyn D. Davis, as Administratrix of the Estate of Charles T. Davis and Owen T. Davis, as Administrator of the Estate of Corey Davis (collectively, "Petitioners"), by and through counsel, J. Michael Ranson, Cynthia M. Ranson and Ranson Law Offices; and G. Patrick Jacobs and Jacobs Law Office, state and claim as follows:

1. That this is an action to enforce a federal Non-Prosecution Agreement under which Alpha Natural Resources, Inc., Alpha Appalachia Holdings, Inc., f/k/a Massey Energy Company (collectively "Respondents") agreed to pay the Petitioners and other persons One Million Five Hundred Thousand Dollars ($1,500,000.00) in criminal restitution.

2. That Petitioner, Jeffrey C. Skeens is the Administrator of the Estate of Grover Skeens, a miner killed in the Upper Big Branch Explosion.

3. That Petitioner, Carolyn D. Davis is the wife and the Administratrix of the Estate of Charles T. Davis, a miner killed in the Upper Big Branch Explosion.

4. That Petitioner, Owen T. Davis is the father and the Administrator of the Estate of Cory Davis, a miner killed in the Upper Big Branch Explosion.

5. That further, the Petitioners bring this petition on behalf of the estates of other miners who were killed in the Upper Big Branch explosion, who have not received criminal restitution and/or full settlements as agreed to by Respondents, or who have been defrauded by Respondents. The said deceased miners are listed as Appendix C in Non-Prosecution Agreement (**Exhibit A** attached hereto).

6. Respondent Alpha Natural Resources, Inc. is a Virginia corporation doing business in West Virginia.

7. Respondent Alpha Appalachia Holdings, Inc., formerly known as Massey Energy Company, is a Delaware corporation doing business in West Virginia.

8. Respondents Alpha Natural Resources, Inc. and Appalachia Holdings, Inc., purchased Massey Energy Company, and at all times herein, entered into a Non-Prosecution Agreement in the Southern District of West Virginia, in which they

agreed to pay One Million Five Hundred Thousand Dollars ($1,500,000.00) in criminal restitution to the "beneficiaries" of the miners killed at Upper Big Branch.

9. That Petitioners respectfully request that this Court certify the estates listed on Appendix C of the Non-Prosecution Agreement as a class, pursuant to Rule 23 of the Federal Rules of Civil Procedure.

10. That when the Upper Big Branch mine exploded, a sonic blast carrying shock waves, debris, projectiles and poisonous gases, among other items, shot down the mine shafts and out various portals.

11. That the effects of the explosion in the immediate area caused death to many miners, including without limitation, said Grover Skeens, Charles T. Davis and Cory Davis.

12. That unbeknownst to Petitioners, a Non-Prosecution Agreement was entered into between Respondents and the United States Attorney's Office for the Southern District of West Virginia ("USAO") and the United States Department of Justice ("USDOJ").

13. That as part of said Non-Prosecution Agreement, Respondents agreed to the following:

> As **restitution** for the victims injured in the UBB explosion, Alpha agrees to pay, or to cause Massey or its affiliates to pay, at least $1,500,000 to each of the families of the fallen miners and to two individuals affected by the UBB explosion.

(emphasis added).

14. That Appendix C of the Non-Prosecution Agreement states that "$16,500,000 was previously **or anticipated to be paid** as part of settlements with the families of eleven of the fallen miners in the actions." (emphasis added).

15. That at no time prior to the signing of said Non-Prosecution Agreement, had Petitioners been paid any criminal restitution as part of any settlement, nor have they been paid since that date.

16. That Petitioners and those listed on Appendix C of the Non-Prosecution Agreement did settle their respective civil wrongful death suits with the above Defendants for Sum X and Terms Y.[1]

17. In negotiating Sum X and Terms Y, the Non-Prosecution Agreement clearly set forth what was being paid and the terms of said payment.

18. That specific Y terms were executed by Petitioners and their families listed on Appendix C, and Term Y will set forth for what claims Sum X resolved.

19. That as a matter of law, the settlements for which Sum X were paid and received were solely civil wrongful death claim proceeds, and all of these settlements were approved by various circuit courts in West Virginia as such.

20. That as part of the approval process, West Virginia law requires that testimony and/or evidence be given and representations be made to the Court regarding the terms of the settlement and the amounts of the settlement.

21. That the transcript of those hearings, if released by the Court, will verify the basis upon which Sum X was paid to those listed on Appendix C.

22. That at no time prior to resolving their respective cases with the Respondents was an amount for criminal restitution ever disclosed and/or discussed with Petitioners.

---

[1] The amount of settlement is under a confidentiality agreement. In fact, the Respondents are in breach of that agreement. Upon an Order from this Court the amounts and terms can be disclosed, as well as those terms set forth in the settlement documents. The Petitioners ask this Court to examine those documents regarding the criminal restitution issue.

23. That any representation that monies were paid to Petitioners or any member of Appendix C as criminal restitution prior to the date of executing the Non-Prosecution Agreement by the defendants is fraudulent.

24. That the estates of the deceased miners named in the Non-Prosecution Agreement in Appendix D were all paid Five Hundred Thousand Dollars ($500,000.00) in criminal restitution shortly after the signing of the Non-Prosecution Agreement, and they were apparently paid an additional One Million Dollars ($1,000,000.00) in criminal restitution under the Non-Prosecution Agreement.

25. That said the Five Hundred Thousand Dollars ($500,000.00) in criminal restitution paid to Appendix D recipients was not paid as part of a civil wrongful death settlement but was paid to the estates of the deceased miners to be distributed according to the laws of descent and distribution as set forth in the Non-Prosecution Agreement.

26. The families listed on Appendix C have not been paid any criminal restitution.

27. That Respondents committed this misrepresentation and/or fraud in order to avoid paying any criminal restitution to the injured miners listed in Appendix C.

28. That it is clear from the agreement that Respondents intended to use, and have in fact used, monies from a settlement with the individuals named in the Non-Prosecution Agreement as "restitution" money, even though such a representation was never made to these Petitioners, or to anyone on Appendix C, and even though Petitioners agree to such terms.

29. That Respondents made false public announcement that restitution was paid, or would be paid when, in fact, no such payments have been paid to Petitioners.

## COUNT I

### ENFORCEMENT OF NON-PROSECUTION AGREEMENT

30. That the preceding paragraphs are realleged as if restated herein.

31. That Respondents agreed as part of the Non-Prosecution Agreement to pay One Million Five Hundred Thousand Dollars ($1,500,000.00) in criminal restitution to family members listed on Appendix C.

32. That Respondents have failed to make said payments.

33. That Respondents should be required to make the payment as set forth in the Non-Prosecution Agreement.

## COUNT II

### ENFORCEMENT OF SETTLEMENT AGREEMENTS

34. That the preceding paragraphs are realleged as if restated herein.

35. That Petitioners did not, and were not required to, sign a release in exchange for criminal restitution.

36. That if it is Respondents' representation that One Million Five Hundred Thousand Dollars ($1,500,000.00) of Sum X was paid for criminal restitution and not part of the payment for the settlement of the civil wrongful death claim, then the settlement amount agreed upon to settle the wrongful death claim is now due and owing to each of the Petitioners in the amount of One Million Five Hundred Thousand Dollars ($1,500,000.00) to each petitioner.

37. That Respondents should be required the pay the full sums due and owning as Sum X, as agreed by the parties and as approved by the circuit courts of West Virginia.

## COUNT IIII

## FAILURE TO PAY FIVE HUNDRED

## THOUSAND DOLLARS ($500,000.00) TO THE ESTATES

38. That the preceding paragraphs are realleged as if restated herein.

39. That in the event the Court would find as a matter of law that the previous settlement should be designated as payment of criminal restitution then only One Million Dollars ($1,000,000.00) of settlement monies was designated as settlement monies.

40. That Five Hundred Thousand Dollars ($500,000.00) of criminal restitution was paid to the Estates of Appendix D and the same amount should be paid to Estates set forth in Appendix C.

## COUNT IV

## FRAUD

41. That the preceding paragraphs are realleged as if restated herein.

42. That in the event Respondents intended to use settlement money paid in civil wrongful death claims as criminal restitution as well, then Respondents defrauded Petitioners and those listed on Appendix C, inasmuch as they informed Petitioners and the circuit courts of West Virginia that said payment of Sum X was for payment of settlement of the civil wrongful death claims, and the Petitioners have been harmed as a result of said fraud.

**WHEREFORE**, Petitioners, as victims of the Upper Big Branch Mine explosion, seek the following relief:

a. That the Court recognize those on Appendix C as a Class;

b. That the Court order Respondents to pay One Million Five Hundred Thousand Dollars ($1,500,000.00) to each Petitioner as criminal restitution;

c. That, if any of the previous settlements monies paid to these Petitioners is designated and/or defined as criminal restitution, the Court order the full amount of the civil wrongful death settlements be paid to Petitioners, forthwith;

d. That, if the Court allows prior civil wrongful death settlements to satisfy criminal restitution payments, the Court order Respondents to pay the remaining Five Hundred Thousand Dollars ($500,000.00) of criminal restitution owed to the estates of those miners listed on Appendix C;

e. Punitive damages for any fraud that was committed.

f. That Respondents pay all costs and attorney fees associated with this action;

g. Any other relief that the Court believes is just and equitable.

        JEFFREY C. SKEENS, as Administrator
        of the Estate of Grover Skeens,
        CAROLYN D. DAVIS, as Administratrix
        of the Estate of Charles T. Davis and
        OWEN T. DAVIS, as Administrator
        <u>of the Estate of Cory Davis,</u>
        By Counsel

*/s/ J. Michael Ranson*
_____
**J. Michael Ranson State Bar # 3017**
**Cynthia M. Ranson State Bar # 4983**
**George B. Morrone, III, State Bar #4980**
Ranson Law Offices, PLLC
1562 Kanawha Blvd., East
Post Office Box 3589
Charleston, West Virginia 25336-3589
(304) 345-1990

**G. Patrick Jacobs State Bar #1867**
7020 MacCorkle Avenue, SE
Charleston, WV 25304
(304) 926-6676
Counsel for Petitioners