IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

JEFFREY C. SKEENS, et al.,

        Petitioners,

v.                                        CIVIL ACTION NO.   5:12-cv-06854

ALPHA NATURAL RESOURCES, INC., et al.,

        Respondents.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed *Respondents Alpha Natural Resources, Inc.'s and Alpha Appalachia Holdings, Inc.'s Motion to Dismiss Petitioners' Amended Complaint* (Def.'s Mot.) (Document 30). After careful consideration of the Amended Complaint and the parties' written submissions, the Court finds that Respondents' motion should be granted.

### I.    BACKGROUND[1]

On April 5, 2010, in Montcoal, West Virginia, twenty-nine miners died in an explosion that occurred at Massey Energy Company's Upper Big Branch ("UBB") mine.  Afterwards, the United States Attorney's Office for the Southern District of West Virginia and the United States Department of Justice ("DOJ") initiated a criminal investigation.  On April 4, 2011, each of the

---

[1] In reviewing Respondents' motion to dismiss, the Court has considered copies of Petitioner's Settlement Agreements and court orders approving such settlements, as they are integral to the complaint, and, in fact, are explicitly relied on, and authentic. (*See, Phillips v. LCI Int'l Inc.,* 190 F.3d 609, 618 (4th Cir.1999) (stating that "a court may consider [a document outside the complaint] in determining whether to dismiss the complaint" where the document "was integral to and explicitly relied on in the complaint" and its authenticity has not been challenged.) The Court has also considered the Non Prosecution Agreement between the Government and Alpha, attached as an exhibit to Petitioners' response in opposition, for the same reason. (*Id.*)

Petitioners, acting on behalf of the estates of three of the miners who died in the UBB explosion, entered into confidential settlement agreements with Massey and Massey's insurers. They state that "[t]he parties desire to enter into this Settlement agreement in order to provide for certain payments in full settlement and discharge of all claims which are, or might have been, the subject of the [April 5, 2010 UBB explosion]." (*See, e.g.,* "Resp.'s Mot. Ex. A" (Document 30-1 at 2-8) ¶ C.) Moreover, the Settlement Agreement provides in pertinent part:

> 1.0 Release and Discharge
>
> > 1.1 In consideration of the payments set forth in Section 2, [each Petitioner] hereby completely releases and forever discharges [Massey], [Massey's insurers], and their . . . predecessors, successors and assigns . . . from any and all past, present and future claims . . . causes of action, wrongful death claims, rights, damages, . . . expenses and compensation of any nature whatsoever, whether based on a tort, contract or other theory of recovery, which [each Petitioner] now has, or which may hereafter accrue or otherwise be acquired, on account of, or may in any way grow out of, or which are the subject of any claim associated with the [UBB explosion] (and any related pleadings) including, without limitation, any and all known or unknown claims for bodily and personal injuries to [each decedent], or any future wrongful death claims of [each decedent] and/or such decedent's representatives or heirs . . .
> >
> > . . . .
> >
> > 1.5 . . . [Each Petitioner] further agrees that [he/she] has accepted payment of the sums specified herein as a complete compromise of matters relating to the death of [the decedent miner] and the events of April 5, 2010, which events remain in dispute both factually and legally. . .
>
> (Ex. A at ¶¶ 1.1, 1.5.)

By July 12, 2011, the Honorable William S. Thompson, Circuit Court Judge of Boone County, West Virginia, had approved each settlement agreement. (*See,* "Resp.'s Mot. Ex. D" (Document 30-1 at 31-37); "Resp.'s Mot. Ex. E" (Document 30-1 at 39-45); and "Resp.'s Mot. Ex. F" (Document 30-1 at 47-54.)) Judge Thompson noted Petitioners Skeens and Carolyn Davis

testified that they understood that "this compromise and settlement agreement is intended to resolve any and all potential claims . . . arising out of the death of [the deceased miner]." (Resp. Mot. Ex. D. ¶ 11; Resp. Mot. Ex. E. ¶ 7.) Similarly, in the case of Petitioner Owen, Judge Thompson found that "[t]his compromise and settlement agreement resolves any and all potential claims . . . arising out of the death of [the deceased miner]." (Resp. Mot. Ex. F. at 8.)

On June 1, 2011, Alpha Natural Resources ("Alpha") acquired Massey and its affiliate, Performance Coal Company ("Performance"), which operated the UBB mine. On December 6, 2011, the United States Attorney's Office for the Southern District of West Virginia, the DOJ, (collectively referred to as "the Government") and Alpha (formerly known as Massey) entered into a Non-Prosecution Agreement. ("Pet.'s. Ex. B") (Document 32-2.) In consideration for Alpha entering into the agreement and their promise to perform the obligations therein, the Government agreed not to criminally prosecute or bring any civil action against Alpha and its affiliates in connection with the Government's investigation of the UBB mine explosion. (*Id.* ¶ 11.) The Agreement provides in pertinent part:

> 8. As restitution for the victims injured in the UBB explosion, Alpha agrees to pay, or to cause Massey or its affiliates to pay, at least $1,500,000 to each of the families of the fallen miners and two individuals affected by the UBB explosion. The total restitution payment shall be $46,500,000, of which (a) $16,500,000 was previously or anticipated to be paid as part of settlements with the families of eleven of the fallen miners in the actions in Appendix C; and (b) $30,000,000 will be paid to the families of the fallen miners and two individuals affected by the UBB explosion in the actions in Appendix D who have not resolved their claims, consisting of payment to each of (i) $500,000 to be paid within 15 days of the execution of this Agreement, and (ii) $1,000,000 which will be payable at the time of the resolution of pending civil claims through settlement, judgment, or otherwise, and as part of such civil resolution to the extent that civil resolution results in a monetary recovery. Alpha will make the payment described in subparagraph (b) above into a fund established to pay those families of the fallen miners and the individuals.

3

(*Id.* ¶ 8.) Petitioners were all named in Appendix C under subsection (a). ("Am. Compl. Ex. A") (Document 25 at 19.) The Agreement also states that the parties further agree that "if, in the two-year period commencing on the date of the execution of this Agreement, the Government determines that Alpha or Massey has: (a) given false or misleading testimony or information in connection with this Agreement, the disclosures that led to this Agreement, or the performance of this Agreement; or (b) otherwise violated any provision of this Agreement," the Government shall provide written notice to Alpha of that determination . . . ." (*Id.* ¶ 13.) Moreover, the parties agreed that "the government's final determination will not be subject to review in any judicial proceeding." (*Id.*)

On October 19, 2012, Petitioners filed their *Complaint to Enforce Contractual Non-Prosecutorial Agreement as it Relates to Payment of Criminal Restitution or, in the Alternative, to Enforce Payments Under Prior Settlement Agreements* ("Compl.") (Document 1) in the United States District Court for the Southern District of West Virginia. On November 21, 2012, Alpha filed a motion to seal records (Document 8), which the Court granted on November 27, 2012 (Document 10). Also on November 27, 2012, Alpha filed its motion to dismiss (Document 11) and memorandum in support (Document 12). On December 7, 2012, Petitioners filed a *Motion to Expand Prior Order Granting Respondent's Motion to Seal Entered November 27, 2012* (Document 13), wherein they requested an order granting them leave to file documents subject to confidentiality agreements in Circuit Court. On December 17, 2012, they filed a *Motion to Extend Time in Which to Respond to [Alpha's] Motion to Dismiss* (Document 15). On January 4, 2013, this Court denied Petitioners' motion to expand, finding that granting the motion would allow Petitioners to breach the "confidential" classification of documents and/or violate

court orders. (Document 19). Also, on January 4, 2013, the Court denied Petitioners' motion to extend time, finding that they had not shown excusable neglect. (Document 20.) Subsequently, on January 8, 2013, Petitioners filed a *Motion for Leave to File and Serve Amended Complaint* (Document 21) and memorandum in support (Document 22). On January 22, 2013, Respondents filed their response to Petitioners' motion.

By Order entered on January 23, 2013, the Court granted Petitioners' motion for leave to file and serve an amended complaint (Document 21), terminated as moot Respondent's motion to dismiss (Document 11), and directed the Clerk to file their Amended Complaint ("Am. Compl.") (Document 25.)

In the Amended Complaint, Petitioners state that they are bringing this suit on behalf of the estates of three miners who died as a result of the UBB explosion, "who have not received criminal restitution and/or full settlements as agreed to by Respondents, or who have been defrauded by Respondents." (*Id.* at 2.)[2] Petitioners allege that they are entitled to $1,500,000.00 in restitution pursuant to the Non-Prosecution Agreement. (*Id.* at 1, 16.) They contend that the settlements they received were "solely civil wrongful death claim proceeds," not restitution. (*Id.* at 4.) Petitioners assert seven claims against Respondents: (1) Enforcement of the Federal Non-Prosecution Agreement; (2) Enforcement of Contractual Obligation; (3) Enforcement of Settlement Agreements; (4) Failure to Pay Five Hundred Thousand Dollars to the Estates; (5) Fraud; (6) Breach of Confidentiality; and (7) Action to Set Aside the Non-Prosecution Agreement as it Relates to the Petitioners. (*Id.* at 8-16.) Petitioners assert that this Court has federal question

---

2 Petitioners request that the Court certify the estates listed in Appendix C of the Non-Prosecution Agreement as a class, pursuant to Rule 23 of the Federal Rules of Civil Procedure. (*Id.* at 3.)

jurisdiction to review the Non-Prosecution Agreement pursuant to 18 U.S.C. § 3771 [the Crime Victims' Rights Act] and diversity jurisdiction to review the state law claims. (*Id.* at 8.)[3]

On February 11, 2013, Respondents' filed their Motion to Dismiss Petitioners' Amended Complaint (Document 30), attached exhibits, and memorandum in support (Document 31). Respondents' motion to dismiss requests dismissal with prejudice pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), 12(b)(7) and 9(b). (Resp. Mot. at 1.) On February 25, 2013, Petitioners' filed their response in opposition and attached exhibits (Document 32). On February 28, 2013, Respondents' filed their reply (Document 35).

## II. JURISDICTION

A motion to dismiss pursuant to Rule 12(b)(1) raises the fundamental question of whether a court is competent to hear and adjudicate the claims brought before it. Federal courts derive their jurisdictional power to hear cases and controversies from Article III of the Federal Constitution. It is axiomatic that a court must have subject matter jurisdiction over a controversy before it can render any decision on the merits. Challenges to jurisdiction under Rule 12(b)(1) may be raised in two distinct ways: "facial attacks" and "factual attacks." *Thigpen v. United States,* 800 F.2d 393, 401 n. 15 (4th Cir.1986), *rejected on other grounds, Sheridan v. United States,* 487 U.S. 392 (1988). In this case, Respondents have facially attacked the Petitioners' Amended Complaint. A "facial attack" questions whether the allegations in the complaint are sufficient to sustain the court's jurisdiction. (*Id.*) If a "facial attack" is made, the court must accept the allegations in the

---

3 Petitioners assert that Respondent Alpha Natural Resources, Inc., is a Virginia corporation and that Respondent Alpha Appalachia Holdings, Inc., is a Delaware corporation, both doing business in West Virginia. (Compl. ¶¶ 6-7.) The Court notes that Petitioners do not allege where Respondents' principal places of business are located or the citizenship of any of the Petitioners.

complaint as true and decide if the complaint is sufficient to confer subject matter jurisdiction. (*Id.*) The burden of proving subject matter jurisdiction in a motion to dismiss is on the party invoking such jurisdiction. *See, Richmond, Fredericksburg & Potomac R.R. Co. v. United States,* 945 F.2d 765, 768 (4th Cir.1991).

### III.     DISCUSSION

Respondents argue that the Amended Complaint does not allege any facts or legal basis in support of federal jurisdiction. ("Resp.'s Mem." (Document 31) at 7.) They argue that although Petitioners rely on and cite to provisions of the Crime Victims' Rights Act ("CVFA"), 18 U.S.C. §§ 3771 *et seq.,* this Court does not have federal question jurisdiction because that statute is inapplicable. (Resp.'s Mem. at 7-8.) Respondents argue that the CVRA does not apply to this case because they have not been prosecuted for any crime. (*Id.* at 8) (citing *In re W. R. Huff Asset Mgmt. Co.,* F.3d 555, 564 (2d Cir.2005)). Petitioners argue that the CVRA does apply to this case and that their status as "victims" is undisputed.[4] (citing *Does v. United States*, 817 F.Supp.2d 1447 (S.D. Fla., 2011)).

The CVRA provides "crime victims" with certain rights and involvement in the prosecutorial process against a criminal defendant. *See, Searcy v. Paletz,* 2007 WL 1875802, at 2 (D.S.C. June 27, 2007); *United States v. Moussaoui,* 483 F.3d 220, 234 (4th Cir.2007) ("The CVRA was designed to protect victims and guarantee them some involvement in the criminal justice process.")[5] The CVRA defines "crime victim" as "a person directly and proximately

---

4 In their Reply brief, Respondents dispute Petitioners' contention and assert that their "agreement to make payments to those injured who were identified as victims of the explosion is in no way an admission that they were victims of criminal wrongdoing." ("Resp.'s Reply" (Document 35) at 4.)
5 The Fourth Circuit Court of Appeals has concluded that "[t]he rights codified by the CVRA, however, are limited to

7

harmed as a result of the commission of a Federal offense." 18 U.S.C. § 3771(e).[6] The Act establishes the following rights:

> (1) The right to be reasonably protected from the accused.
>
> (2) The right to reasonable, accurate, and timely notice of any public court proceeding, or any parole proceeding, involving the crime or of any release or escape of the accused.
>
> (3) The right not to be excluded from any such public court proceeding, unless the court, after receiving clear and convincing evidence, determines that testimony by the victim would be materially altered if the victim heard other testimony at that proceeding.
>
> (4) The right to be reasonably heard at any public proceeding in the district court involving release, plea, sentencing, or any parole proceeding.
>
> (5) The reasonable right to confer with the attorney for the Government in the case.
>
> (6) The right to full and timely restitution as provided in law.
>
> (7) The right to proceedings free from unreasonable delay.
>
> (8) The right to be treated with fairness and with respect for the victim's dignity and privacy.

18 U.S.C. § 3771(a).

The CVRA states that the "rights described in subsection (a) shall be asserted in the district court in which a defendant is being prosecuted for the crime or, *if no prosecution is underway,* in the district court in the district in which the crime occurred." 18 U.S.C. § 3771(d) (3) (emphasis added). Based upon the language of the statute, there are clearly rights in subsection (a) that apply

---

the criminal justice process; the Act is therefore silent and unconcerned with victims' rights to file civil claims against their assailants." *Moussaoui*, 483 F.3d at 234-35.

6 The CVRA provides "[i]n the case of a crime victim who is . . . deceased, . . . the representatives of the crime victim's estate, family members, or any other persons appointed as suitable by the court, may assume the crime victim's rights under this chapter . . ." (18 U.S.C. § 3771(e))

before prosecution is underway.[7] However, "[t]he right to full and timely restitution a*s provided in law*" is not one of them.  18 U.S.C. § 3771(a)(6) (emphasis added.) "The qualifier 'as provided in law' require[s] that the court consider the applicable provisions of the Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C. § 3663A." *United States v. Daly*, Case No. 3:11-cr-121 (AWT), 2012 WL 315409, at *4 (D. Conn. Feb. 1, 2012.) (*Id.*) The MVRA and the Victim and Witness Protection Act ("VWPA"), 18 U.S.C. § 3663, only apply "when sentencing a defendant convicted of an offense." (*See*, 18 U.S.C. § 3663; 18 U.S.C. § 3663A.) Because Respondents have not been charged, much less convicted, of any crime, the CVRA does not apply to Petitioners' claims for restitution. (*See, Daly,* 2012 WL 315409, at *4) ("a victim has a right to restitution under the applicable statute only after a defendant has been both charged with and convicted of an offense for which restitution can be ordered.")

Based on the foregoing, the Court finds that Petitioners have failed to carry their burden of persuasion in showing that the Court has federal question subject matter jurisdiction. *See, Richmond, Fredericksburg & Potomac R.R. Co.,* 945 F.2d at 768.  Moreover, Petitioners have not shown by a preponderance of the evidence that the Court has diversity jurisdiction. (*See White v. Chase Bank USA, NA.,* Civil Action No. 2:08–1370, 2009 WL 2762060, at *1 (S.D.W.Va. Aug. 26, 2009) (Faber, J.) (citing *McCoy v. Erie Insurance Co.,* 147 F.Supp.2d 481, 488 (S.D.W.Va.2001) (Haden, J.)). Under 28 U.S.C. § 1332, a federal court has original jurisdiction over all civil actions where the matter in controversy exceeds the sum or value of $75,000,

---

7 For example, the right to be "reasonably protected from the accused" and the right to be "treated with fairness and with respect" may apply pre-indictment.  *Does v. United States*, 817 F.Supp.2d 1447 (S.D. Fla., 2011) ("The government's obligation to give victims notice of their rights under subsection (a) can apply before any charging instrument is filed, depending on which subsection (a) right is at issue and the circumstances involved.")

exclusive of interest and costs, and is between citizens of different States. 28 U.S.C. § 1332(a)(1). It is well established that, with the exception of certain class actions, "Section 1332 requires complete diversity among parties, meaning that the citizenship of every plaintiff must be different from the citizenship of every defendant." *Cent. W. Va. Energy Co. v. Mt. St. Carbon, LLC,* 636 F.3d 101, 103 (4th Cir.2011). If a corporation is a party, it "shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1). Petitioners' Amended Complaint is devoid of any mention of Respondents' principal places of business. Moreover, Petitioners do not state their own citizenship.[8] Therefore, Petitioners have failed to establish that there is complete diversity among the parties. Accordingly, they have not met their burden of proof in establishing federal subject matter jurisdiction. Thus, Respondents' motion to dismiss pursuant to Rule 12(b)(1) should be granted. The Court need not address Respondents' other arguments.

## IV.    CONCLUSION

WHEREFORE, after careful consideration and based on the findings herein, the Court does hereby **ORDER** that *Respondents Alpha Natural Resources, Inc.'s and Alpha Appalachia Holdings, Inc.'s Motion to Dismiss Petitioners' Amended Complaint* (Document 30) be **GRANTED** and that Petitioners' Amended Complaint be **DISMISSED WITHOUT PREJUDICE.**

---

8 "[T]he the legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent." 28 U.S.C. § 1332(c)(2).

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER: May 10, 2013

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA

11